JOURNAL ENTRY AND OPINION
Defendant-appellant-respondent Patrick J. Shank ("Shank"), dob June 28, 1967, appeals from the determination of present child support and an arrearage in past support following the establishment of paternity. For the reasons adduced below, we affirm in part (see first assignment of error) and reverse and remand in part (see second assignment of error)
A review of the record on appeal indicates that Jennifer L. Sullins, dob September 3, 1974, gave birth to Joshua Sullins on September 20, 1992.[1] On February 9, 1996, the plaintiff-appellee petitioner Cuyahoga County Child Support Enforcement Agency ("CSEA") filed an action to establish paternity pursuant to R.C.3111.01, et seq., naming Shank as the putative father.
Genetic testing in December of 1996 indicated a probability of 99.92 percent that Shank was the father of Joshua Sullins.
On October 9, 1998, subsequent to a trial where Shank appeared with counsel, the trial court issued its judgment entry which determined that: (1) Shank's current monthly child support was $294.20; (2) Shank pay $10 per month toward the support arrearage; (3) including poundage and the arrearage payment, the monthly amount of support to be paid by Shank was $310.28, beginning October 10, 1998; (4) the past support arrearage owed to the mother was $18,410, for which a lump sum judgment was awarded; (5) the past care owed to the Ohio Department of Human Services was $5,712, for which a lump sum judgment was awarded; and, (6) the maternity expenses owed to the Ohio Department of Human Services was $5,364.73, for which a lump sum judgment was awarded.[2]
Shank presents two assignments of error for review.
The first assignment of error provides:
 I THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO MAKE NECESSARY FINDINGS OF FACT AS TO THE APPELLANT'S EMPLOYMENT STATUS BEFORE IMPUTING INCOME TO APPELLANT AND FAILED TO PROPERLY COMPLETE A CHILD SUPPORT COMPUTATION WORKSHEET.
In this assignment, Shank argues that the trial court failed to follow the dictates of R.C. 3113.215 (A)(5) in that the trial court did not make a finding that he was voluntarily unemployed or underemployed before it allegedly imputed income to him in determining the current child support base amount of $294.20 per month.
This assignment is without merit because it is not evident that the trial court imputed any income to Shank, which, had it done such imputation, would trigger the specific finding mandate pursuant to R.C. 3113.215 (A)(5). Instead, the record contains evidence offered by CSEA that Shank had been employed at Voss Industries from 1995 through June 19, 1998, earning $40,316.22 in 1997, and $18,523.64 for the first twenty-four weeks of 1998. The Voss Industries pay record reflects that during his employment there, from November 1995 to June 30, 1998 (a period of 32 months), Shank was paid a gross amount of $93,322.36. This amount, $93,322.36, reflects an average monthly amount of $2,916.32 ($93,322.36 ÷ 32 months = $2,916.32), which in turn reflects a yearly average earnings amount of $34,995.84 ($2,916.32 x 12 months = $34,995.84)).[3] The amount $18,523.64 reflects a weekly average gross wage amount of $771.82, and an average hourly wage of $19.29. The evidence offered by CSEA also indicated that subsequent to his employment at Voss Industries, Shank was employed as a welder at three other companies in 1998, earning, on average, $13.33 per hour.[4] Combined gross earnings at these three subsequent companies totaled $4,312.65. Thus, Shank's demonstrated gross earnings for 1998, a year in which Shank worked nine months, in the amount of $22,835.61 ($18,523.26 + $4,312.65 = $22,835.61). This amount, $22,835.61, reflects an average monthly gross amount of $2,537.32 ($22,835.61 + 9 months = $2,537.32). Carried out for an entire year, the average 1998 monthly earnings amount of $2,537.32 equates to a yearly earnings amount for 1998 of $30,447.84 ($2,537.32 x 12 months = $30,447.84)
In the child support worksheet, the trial court utilized in making its order, the court used an amount of $30,000 for Shank's annual gross income, and $25,000 annual gross income for the mother. See line 1.a of the worksheet. Pursuant to Child Support Schedule contained in R.C. 3113.215, the combined gross income of the parents ($55,000) mandates a yearly amount of between $7,468 to $7,524 for one child, or $622.33 to $625 per month. The court, after adjusting the annual gross income of the parents, determined the percentage of parent's income to total income as 50.5 percent for the father, and 49.5 percent for the mother. Applying the father's percentage to the monthly amount of current child support yields an amount for the father of between $314.27 to $315.62.
The standard of review of an appellate court in matters concerning child support is abuse of discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We must look to the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
We see no abuse of discretion in the trial court using the yearly earnings figure of $30,000 for Shank given the documented earnings of Shank at the time of the hearing.
The first assignment of error is overruled.
The second assignment of error provides:
 II THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN DETERMINING APPELLANT'S ARREARAGES OWED TO APPELLEE SULLINS.
In this assignment, appellant argues that the past care arrearage amount of $18,410 owed to the mother, appellee-Sullins, is against the manifest weight of the evidence and therefore an abuse of discretion by the trial court. Appellant argues that the trial court did not use accurate incomes of the parties between April 1, 1995 and October 9, 1998. Appellee concedes this argument in its appellate brief, at 10-11. Given the lack of income records for both mother and father for 1995, it is impossible for this court to determine a correct past care amount. Accordingly, this assignment is found to have merit, and the matter of past care owed by father to the mother, only, is reversed and remanded for a new determination of that amount.
In addressing this argument, we note that a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279.
The second assignment of error is reversed and remanded.
Judgment affirmed in part, and reversed and remanded in part.
This cause is affirmed in part; reversed in part and remanded for further proceedings consistent with the opinion herein.
It is, therefore, considered that said appellant and said appellees equally share the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the
Exceptions. ___________________________ JAMES D. SWEENEY, JUDGE
DIANE KARPINSKI, P. J. AND TIMOTHY E. McMONAGLE. J., CONCUR.
[1] CSEA's appellate brief consistently misspells the surname "Sullins" as "Sullens."
[2] A transcript of the trial is not in the record on appeal.
[3] Pursuant to R.C. 3113.215 (B)(5)(h), the trial court may use an average of earnings, where appropriate, in determining a parents' income.
[4] Shank was paid $13 per hour at Ameritemps, $13.50 per hour at Royalton Architectural Fabricators, and $13.50 per hour at Farasy Steel Fabricators. His gross earnings at Ameritemps totaled $972 (during July 1998). His gross earnings at Royalton Architectural Fabricators totaled $2,368.65 (from July 6, 1998 to August 29, 1998). His gross earnings at Farasy Steel Fabricators totaled $972 (during a four-week period in August and September 1998).